FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
8:23 am, Dec 22, 2020
JEFFREY P. COLWELL, CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.  _____
(To be supplied by the court)

ERIKA JACOBS , Plaintiff

v.

AIMBRIDGE HOSPITALITY
(TOWNE PLACE SUITES) ,

_____ ,

_____ , Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

## EMPLOYMENT DISCRIMINATION COMPLAINT

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

## A.  PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

ELIJA JACOBS   PO BOX 6252 BROOMFIELD, CO 80021

(Name and complete mailing address)

602-434-3107   Jeneencat2@outlook.com

(Telephone number and e-mail address)

## B.  DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:  AIMBRIDGE HOSPITALITY / TOWNE PLACE SUITES

(Name and complete mailing address)
480 Flatirons BVD BLOOMFIELD, CO 80021

972-830-3123 or 214-543-3242   Christine.nilluka@aimhosp.com

(Telephone number and e-mail address if known)

Defendant 2:  _____

(Name and complete mailing address)

_____

(Telephone number and e-mail address if known)

## C.  JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check all that apply)*

✓  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. (employment discrimination on the basis of race, color, religion, sex, or national origin)

____  Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, et seq. (employment discrimination on the basis of a disability)

____  Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621, et seq. (employment discrimination on the basis of age)

____  Other: (*please specify*) _____

## D.   STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action and the specific facts that support each claim. If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:   Racial Discrimination in Workplace

The conduct complained of in this claim involves the following: (*check all that apply*)

_____ failure to hire          ✓ different terms and conditions of employment

_____ failure to promote          _____ failure to accommodate disability

_____ termination of employment          ✓ retaliation

✓ other: (*please specify*)   Treated differently from other employees of different races + nationalities.

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

✓ race          _____ religion          ✓ national origin          _____ age

_____ color          _____ sex          _____ disability

Supporting facts:                                    see attached page i

The supporting facts are as follows:

① From the beginning of employment I was not trained on major job functions of an auditor ordered by management. One of my main job duties is to train all new night auditors pursuant I am the main full-time night auditor. Management, Tessa Fetch, refused to acknowledge me as the main night auditor or as the position of night auditing being a specialty. There is always only 2 night auditors at a hotel. One is the main auditor and the other auditor is part-time. Tessa Fetch intentionally and with spite & no supporting reason gave my duty to Elizabeth. Elizabeth is the shuttle driver and is a white female. This causes much complications with night auditing. Human resources considers night auditing a specialty.

② Two part-time night auditors (Tsion and Brian) were trained by management to do duties that were taken away from me or related to night auditing in which I was denied the right to perform

CLAIM TWO: _Retaliation_

The conduct complained of in this claim involves the following: (*check all that apply*)

\_\_\_\_ failure to hire        \_\_\_\_ different terms and conditions of employment

\_\_\_\_ failure to promote        \_\_\_\_ failure to accommodate disability

\_\_\_\_ termination of employment     ✓ retaliation

✓ other: (*please specify*) _would not transfer to another Hotel_

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

✓ race      \_\_\_\_ religion      \_\_\_\_ national origin      \_\_\_\_ age

\_\_\_\_ color      \_\_\_\_ sex      \_\_\_\_ disability

Supporting facts:

The supporting facts are as follows:

Please see attachment

**Click Here for Additional Claim**

4

**D.     STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action and the specific facts that support each claim. If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM THREE: _Sexual Harrasment_

The conduct complained of in this claim involves the following: *(check all that apply)*

____ failure to hire                    ____ different terms and conditions of employment

____ failure to promote              ____ failure to accommodate disability

____ termination of employment   ____ retaliation

✓ other: *(please specify)*  _Sexual Harrasment_

Defendant's conduct was discriminatory because it was based on the following: *(check all that apply)*

✓ race          ____ religion          ____ national origin          ____ age

____ color      ✓ sex          ____ disability

Supporting facts:

Management disregarded my EEOC claim of sexual Harrasment, I had a female employee hit me extremely hard on my buttocks and ask ne why I was not speaking. I advised the employee to not do that again. I also reported the employee, VAL, to the General Manager Addrew. Management took the entire Situation as a joke.

3

**E.    ADMINISTRATIVE PROCEDURES**

Did you file a charge of discrimination against defendant(s) with the Equal Employment
Opportunity Commission or any other federal or state agency? (*check one*)

☑ Yes (*You must attach a copy of the administrative charge to this complaint*)

☐ No

Have you received a notice of right to sue? (*check one*)

☑ Yes (*You must attach a copy of the notice of right to sue to this complaint*)

☐ No

**F.    REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed
to identify the relief you are requesting, use extra paper to request relief. Please indicate that
additional paper is attached and label the additional pages regarding relief as "F. REQUEST
FOR RELIEF."*

I request all relief entitled to a Title VII claimant Monetary,
injunctive and the gaurantee of employment with relocation
to another hotel facility as a night auditor (full-time)

**G.    PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this
complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746;
18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my
knowledge, information, and belief that this complaint: (1) is not being presented for an improper
purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) is supported by existing law or by a nonfrivolous argument for extending or modifying
existing law; (3) the factual contentions have evidentiary support or, if specifically so identified,
will likely have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

12-21-20
_____
(Date)

(Revised December 2017)

5

CLAIM ONE

#2. Continued for Claim One: Tsion is of African Origin, born and is from another African country. Brian is a white male.

3. Management has a problem with Black Americans born and raised in America. As I Erika Jacobs was. Favoritism and respect are shown to all other races and persons from different nationalities. This discrimination is demonstrated in training, terms and conditions of employment. In discovery, fair wages for all employees that work front desk needs to be revealed. I was made to take a .50 cent wage reduction pursuant my transfer to Towne Place Suites in Broomfield, CO.

4. When I began at Towne Place Suites Management would not process the night audit packets. Night Audit packets are to be processed the following morning by all managers. It was so many unprocessed night audit packets, done by Erika Jacobs Plaintiff, till they were on the floor stacked up all around the managers office. Management did not start to process the night audit packets until Tsion was hired as a part-time night Auditor.

5. My duty to train other night auditors was taken away by Tessa Fetch for no reason. I am a good trainer for night auditing. I trained Tsion and one other potential part-time night auditor before this job duty was taken away from me at Towne Place Suites.

6. I am not made aware of new procedures or training guides as the other employees. For example: CLC training. Tessa Fetch had selected all the other front desk staff for CLC training and left me off the list. I had to advise Tessa of her exclusion of me from the training before I was included. This is an ongoing discriminatory process of management.

7. All front desk staff have been made employee of the month at least 2 times or more. I have been at the hotel for 1 year plus and I have never been made employee of the year. I am an excellent night Auditor. This is very racial.

8. Any cleaning duty that another front desk staff, breakfast staff, houseman, laundry and etc. decides they do not want to perform is given to me to perform and I do not have a choice in the matter. For instance: cleaning of the urns is a Breakfast staff responsibility. The breakfast staff did not want to perform the duty, so it was passed to me to perform every Saturday night. When I confronted

Claim ONE

management about the additional cleaning duty. Their response was: "you are to clean the urns and it will remain that way"

9. I have no voice at my job because I am African American (every racial stereotype appears to be promoted by management). If I bring a concern or complaint to management I am immediately regarded as being untruthful even with supporting evidence. I will receive an email in opposition to my complaint and nothing is done about the matter. This type of racial bias should not be tolerated at the job.

10. I was not hired to be a housekeeper. Yet, that is all management wants me to be. My job description is not for housekeeping. Instead of giving me night auditing assignments, it is opted for cleaning duties.

11. As a night Auditor I work alone all night. Management changed the schedule of the Shuttle driver Elizabeth for her to watch me at night from 3-11pm to 4pm-12am. Elizabeth is supposed to leave at 12am, yet before Covid-19 she would be at the hotel until 1:30am. This prevents me from performing my night auditing procedures. Elizabeth works on the computer in the back office. When night auditing is done no one should be working on any office computers. In 2019, I was training Tsion, the new part-time night auditor, and Elizabeth did not leave and remained performing job duties on the back computer until 2:45am.

12. After the EEOC sent management the EEOC complaint more security camera was installed to watch employees. I know this was a retaliatory act by management. It is truly an invasion of privacy to have cameras watching you everywhere you go. I asked Human Resources had they received the EEOC complaint in August 2020 and there was no response by Corporate. Corporate even ignored and disregarded the complaints mentioned in the EEOC complaint.

10/8/2020

*[handwritten:]* EXHIBIT A
Common Listing of Disabilities
on Employment Applications

Customer Service Specialist

🌐 English    👤 Jeneencat2@outlook.com

**DaVita**    **Search for Jobs**    **Candidate Home**

if they have a disability or have ever had a disability.  Because a person may become disabled at any time, we ask all of our employees to update their information at least every five years.

Identifying yourself as an individual with a disability is voluntary, and we hope that you will choose to do so.  Your answer will be maintained confidentially and not be seen by selecting officials or anyone else involved in making personnel decisions.  Completing the form will not negatively impact you in any way, regardless of whether you have self-identified in the past.  For more information about this form or the equal employment obligations of federal contractors under Section 503 of the Rehabilitation Act, visit the U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) website at www.dol.gov/ofccp.

## How do you know if you have a disability?

You are considered to have a disability if you have a physical or mental impairment or medical condition that substantially limits a major life activity, or if you have a history or record of such an impairment or medical condition. *Disabilities include, but are not limited to:*

• Autism
• Autoimmune disorder, for example, lupus, fibromyalgia, rheumatoid arthritis, or HIV/AIDS
• Blind or low vision
• Cancer
• Cardiovascular or heart disease
• Celiac disease
• Cerebral palsy
• Deaf or hard of hearing
• Depression or anxiety
• Diabetes
• Epilepsy
• Gastrointestinal disorders, for example, Crohn's Disease, or irritable bowel syndrome
• Intellectual disability
• Missing limbs or partially missing limbs
• Nervous system condition for example, migraine headaches, Parkinson's disease, or Multiple sclerosis (MS)

( **Back** )    ( **Next** )

EXHIBIT A · I have numbered the emails in chronological order

**From:** Erika Jacobs
**Sent:** Tuesday, September 29, 2020 5:36 PM
**To:** Christine Nilluka
**Subject:** FW: Human Resources Response

Sent from Mail for Windows 10

**From:** Erika Jacobs
**Sent:** Tuesday, September 29, 2020 4:54 PM
**To:** Christine Nilluka
**Subject:** RE: Human Resources Response

Have you received the EEOC charge.

Erika Jacobs
9-29-20

Sent from Mail for Windows 10

**From:** Christine Nilluka
**Sent:** Tuesday, September 29, 2020 3:59 PM
**To:** 'Erika Jacobs'
**Cc:** Christine Nilluka
**Subject:** RE: Human Resources Response

Erika,

The owners of the hotel have the right to install security cameras in their hotel to protect the safety of employees, guests and their property. The cameras do not have audio recording. We do not intend to remove the cameras. So, if you cannot continue working at the hotel with them present, please let me know.

With regard to the laundry, doing laundry is a part of your job. If you do not want to do laundry, the only way the company will consider accommodating you is if you have a disability that prohibits you from performing that function with or without a reasonable accommodation. You say you don't have a disability because allergies are not a disability. We simply don't have enough information to know if you are correct because you terminated your accommodation request with UHC, the third-party that administers our accommodation process.

If you don't want to do laundry, you need to open a claim with UHC and engage in the interactive process. At the end of the interactive process, the company will determine whether it can accommodate your request to avoid laundry or if any other accommodation is available that would allow you to safely do laundry. If, on the other hand, you elect not to open a claim and instead merely refuse to do laundry, then you risk discipline and discharge because the hotel will not excuse you from

EXHIBIT A

doing laundry based solely on the note you provided.  Accordingly, I strongly encourage you to open a claim with UHC and follow the accommodation process.

Christine Nilluka – Human Resources | Cell: 214-543-3242

**From:** Erika Jacobs <erika457@live.com>
**Sent:** Friday, September 25, 2020 6:35 PM
**To:** Christine Nilluka <christine.nilluka@aimhosp.com>
**Subject:** RE: Human Resources Response



Cyber Security Reminder: This is an external email please use caution - Forward suspicious messages to
spam@aimhosp.com

Everytime I send in a complaint or concern you  defend the opposing party. You all do not have the right to violate my rights. Please send me state law that states all the claims you have the right to do (that you have documented in each email sent). It is obvious that you all do not understand the Disability Act. I do not have a disability and allergies do not fall under the Disability Act. In the court of law I will be proven to be correct. What law says you have the right to tape associates and all their conversations all day long. In the court of law this is not permitted if you try to present such tape as evidence. Please provide me the statutes in writing that gives you the write to video tape conversations of employee's all day and all the other things you listed in former emails. Please contact the federal government and they will explain to you that the disability act does not include allergies. Any doctor will verify that. Aimbridge cannot go against the federal government definition of a disability. This email was not about the Disability Act. I am fully aware of that act and The Disability act does not apply to me.

Erika Jacobs
9-25-20

Sent from Mail for Windows 10

**From:** Christine Nilluka
**Sent:** Friday, September 25, 2020 2:17 PM
**To:** 'Erika Jacobs'
**Cc:** 'Nilluka, Christine'
**Subject:** Human Resources Response

Erika, Thank you for reaching out, we hope all is well.  I will start with addressing some of your concerns below and then close with answers as it relates to your September 16, 2020 email.

EXHIBIT A

1 ) As a manager myself I often at times do pulse checks with my direct reports on how they are doing, is their workload too much and lastly do they need any help.  As you know one of Aimbridge's core values is *"Think We. Not Me. – As a team we are better together, in our work and our community"*.  In connecting with Tessa she was doing just that, seeing how you were doing.  There was no alterative motive and quite honestly she respects you very much.

2 ) Cameras have been at this location for quite some time and we reserve the right to add additional camera's either in key guest or associate areas. This is permittable by state law and we adhere to those regulations. Safety is one of our main priorities.

3) I am not sure I am following what maybe the issue in your #3. What specifically was said or done? I will need more information.

4) With regards to the Television, when a recent vendor was out to do some programming on our television near the front desk, it was found by the vendor that we had extra channels and it was not set to the Bonvoy Station.  The hotel you are currently working at is part of the Marriott family and ensuring we are following brand standards is very important to us.

If we are selling expired chips and beverages to guests, may I ask have you communicated the outdated product to a manager?  We all have a responsibility in exceeding our guest expectations and ensuring if we see something that we report it immediately.  Perhaps you have but I will make sure Brad and Tessa know.

**Lastly you emailed me on September 16, 2020:**

Stated in my last email, you had turned in a doctor's note stating that you could not do Laundry due to a known medical condition: allergies.   Under Title I of the Americans with Disabilities Act (ADA), a reasonable accommodation is a modification or adjustment to a job, the work environment, or the way things are usually done, unless it would cause undue hardship for the business.  There are three categories of "reasonable accommodations": (1) changes to a job application process; (2) changes to the work environment, or to the way a job is usually done; and (3) changes that enable an employee with a disability to enjoy equal benefits and privileges of employment. At Aimbridge, we want to ensure that all associates can perform their job and have access to the benefits and privileges of employment. However, associates with allergies may need reasonable accommodations in order to be able to enjoy all aspects of their jobs.  The ADA does not contain a list of medical conditions that constitute disabilities. Instead, the ADA has a general definition of disability that each person must meet.

The Americans with Disabilities Act (ADA) requires covered employers to provide effective, reasonable accommodations for employees with disabilities. To help determine effective accommodations, the Equal Employment Opportunity Commission (EEOC), recommends that employers use an "interactive process," which simply means that employers and employees with disabilities who request accommodations (which you did) work together to come up with accommodations. Aimbridge has been trying to engage in the interactive process with you, however you have closed your accommodation request without completing the process.

With respect to your request for our CEO's contact information, I have been hired by Aimbridge to manage employee relations issues for the company and any messages to our Executive team will be



delegated back to me for review and response. We also have a Vice President & Counsel, Employment Practices & Compliance that I can connect you with if you are wanting clarity on any employment law.

Christine Nilluka – Human Resources | Cell: 214-543-3242

**From:** Erika Jacobs <erika457@live.com>
**Sent:** Friday, September 25, 2020 12:05 AM
**To:** Christine Nilluka <christine.nilluka@aimhosp.com>
**Subject:**

Cyber Security Reminder: This is an external email please use caution - Forward suspicious messages to **spam@aimhosp.com**

Attention:

I want to know will you forward me the Information I requested.

Please pass the CEO this message of condition at Towne Place:
1. Tessa never respected me as a night Auditor and she asked me three weeks ago if I was comfortable with my position and if my position was too much for me . I asked her why she asked me that question and she gave no response. Of course I can handle my position; Why would I not be able to handle my position.
2. They have put cameras up in all employee areas all of a sudden. Over the last 3 weeks. I know it is not for the guest protection. If it were they would have put the camera in the hallways on every floor
3. Tessa has problems with how I was trained as a night Auditor. It is as if she is trying to annoy me or cause me to quit my job. I would call it retaliation. No matter what complaints I made you take those same employees and place them in charge of me. As with Tessa.
4. Now they have set the Television for bonvoy only station. Now, I do my job all night long as usual. So what was the reason for the Television alterations.

Why are you giving expired chips and beverages to guest.

Erika Jacobs
9-23-20

Erika

Get Outlook for Android

 upcounsel                              

# List of Disabilities Covered Under ADA: Everything You Need to Know

*The list of disabilities covered under the ADA refers to all the disabilities for which an employee is protected from discrimination by employers.3 min read*

1. What Is the List of Disabilities Covered Under ADA?
2. Understanding ADA
3. Definition of Disability

Updated July 8, 2020:

## What Is the List of Disabilities Covered Under ADA?

The list of disabilities covered under ADA refers to all the disabilities for which an employee is protected from discrimination by employers. The Americans with Disabilities Act of 1990, a civil rights law, prohibits employers from discriminating against employees with disabilities.

## Understanding ADA

Title I of the Americans with Disabilities Act ensures that employees with disabilities are not excluded from taking advantage of job opportunities unless they are not qualified to do the job. This applies to all aspects of employment, such as:

- Hiring
- Job application procedures
- Compensation
- Training
- Advancement
- Hiring and firing
- Benefits

Under the ADA, covered employers are also required to make reasonable accommodations for qualified people who have physical or mental limitations. The only time an employer may be exempt from this is if it can show that a reasonable accommodation would lead to undue hardship for the company's operations.

The ADA offers examples of undue hardship and reasonable accommodations. The ADA also prevents employers from discriminating against employees and job applicants who have mental and physical impairments that limit major life activities. Some examples of these life activities include:

- Seeing
- Walking
- Communicating
- Sitting
- Reading

List of Disabilities Covered Under ADA | UpCounsel 2020 *CKUIBITA*

According to the ADA Amendments Act of 2008, covered entities should interpret the ADA broadly to include as many disabilities as possible and protect as many people as possible.

# Definition of Disability

Under most employment legislation, such as Age Discrimination in Employment Act or Title VII, it is fairly obvious whether a person is a part of a protected class. However, under the ADA, it is a bit more complicated to determine whether a person is part of a protected class.

The ADA has a three-pronged definition of disability. If any of the three prongs are satisfied, the individual counts as disabled. The definition of disability of the ADA is based on the Rehabilitation Act's definition of "handicap." A judgment under the Rehabilitation Act or the ADA is considered a precedent for the other.

The ADA's first definition of disability states that a disabled person is someone who has a mental or physical impairment that prevents participation in major life activities. If an individual has a record or history of such an impairment, he is considered disabled. Finally, if the individual is regarded as having a mental or physical impairment, the individual is considered disabled under the ADA's first definition of disability.

The ADA defines a physical impairment as a physiological disorder or condition, anatomical loss, or cosmetic disfigurement that impacts one or more of these body systems:

- Neurological
- Special-sense organs
- Musculoskeletal
- Digestive
- Cardiovascular
- Respiratory
- Reproductive
- Hemic and lymphatic
- Endocrine
- Skin
- Genitourinary

The ADA defines a mental impairment as any psychological or mental disorder, such as emotional or mental illness, mental retardation, organic brain syndrome, and learning disabilities. The U.S. Equal Employment Opportunity Commission and ADA regulations do not offer a list of all the specific conditions that are considered impairments because it is difficult to be comprehensive. Also, it will be difficult to include new disorders that may develop in the future.

The ADA did include examples of covered mental and physical impairments. Some of these impairments include:

- Muscular dystrophy
- Orthopedic, speech, and hearing impairments
- Visual impairments
- Heart disease
- Epilepsy
- Cerebral palsy
- Mental retardation
- Drug addiction
- HIV
- Specific learning disabilities
- Diabetes

EXHIbITA

Cancer, Multiple Sclerosis, and other serious impairments are not considered disabilities.

Under the ADA, an impairment needs to be a physiological or mental disorder. Depression, stress, and similar conditions are only sometimes considered impairments under the ADA. Whether depression and stress are considered impairments depends on if they result from a documented mental or physiological disorder or if they result from personal life or job pressures. The impairment must substantially limit at least one major life activity.

If you want to learn more about the list of disabilities covered under ADA, you can post your legal need on UpCounsel's marketplace. UpCounsel accepts only the top 5 percent of lawyers to its site. Lawyers on UpCounsel come from law schools such as Harvard Law and Yale Law and average 14 years of legal experience, including work with or on behalf of companies like Google, Menlo Ventures, and Airbnb.

Zip Code
 80238
Get Free Proposals
[ x ]
Zip Code
 80238
Get Free Proposals

CLAIM TWO

1. All the persons I reported as mistreating me as an employee were placed over me as managers. Thus, any discrimination or unfair act reported by me are disregarded. Corporate placed Tessa Fetch over me as the new Assistant GM. Corporate transferred Lyric the original Assistant GM to another hotel location.

2. Management took away the heat and Television. When I asked why the heat was taken away Management promised to buy me a heater. I had to complain to corporate for heat. It gets extremely cold at night in Colorado and having the thermometer only go to 75 degrees on snow and very cold days does not help. The A/C unit only blows out cold air on those nights. The heater was never purchased but there is documentation where management promised to buy a heater. I asked about the Television and I was told it was standard for all Marriot Hotels now. The Television in the lobby only has the Marriot cleaning station only. I went to other Marriott hotels and they still have a Television for all stations in the lobby.  I spoke to our sister property and their lobby television is still playing on all stations. If there were a statewide emergency, I would not know of it because I have no access to a Television. For example: at a prior hotel in Oklahoma in which I worked tornados were frequent. Guest all came downstairs and depended on me to tell them where to seek shelter, if it was ok to stay in their rooms and etc. I would not know what to advise the guest of if I could not watch News to see the status of the tornado in our area.

3. False accusations were being made against me by management and other employees. I was accused of double charging a guest (I never double charge a guest registered with a third party or any other way the reservation is made) by Elizabeth, employee of Towne Place Suites. I was accused of being the only employee having trouble with employee forms by Brad Preston, General Manager.

4. False accusations are believed to be made about me to the Police. Management at Towne Place tried to link me to a crime. Police came by and asked me questions. I am not sure if any information was given to the police about me. Yet, no information should have been given to the police about me because I am not involved in any crimes. I have no criminal record and I have been alive for over 40 years.

5. Tessa Fetch the new assistant GM is trying to make me a housekeeper. She only gives me new cleaning duties to perform. Tessa Fetch took away my main night auditing duty of training new night auditors for no reason

6. Laundry was never a duty for me as a night auditor at Towne Place suites. When Covid-19 started corporate called me, Tara Hunsinger, and asked would I do the Laundry for a temporary period until Covid-19 scare watch was lifted. The Covid-19 scare watch was lifted in May of 2020. I am allergic to a lot of chemicals and contaminants from others on towels, sheets, and etc. I advised management in May of 2020 that due to allergies I would no longer be able to work in laundry. Christine Nilluka tried to make me file for disability. Allergies are not a disability. Christine Nilluka claims that disabilities are not listed by the ADA. Disabilities are listed by the ADA and it is a known fact that allergies are not a disability. Tara Hunsinger, corporate HR, called my insurance company, United Healthcare, and began a disability claim for me without my knowledge or consent. I was terribly upset

Claim II

when the insurance company called me and sent me disability claim form via the mail. I advised United Healthcare that I am not disabled and did not advise anyone to initiate a disability claim on my behalf. My job was threatened by corporate if I would not file disability this is pursuant Christine Nilluka, HR manager. **Please see Exhibit A**

7. I am allergic to dogs and employees started bringing dogs into work with them all day. I acquired some sort of illness from the dog dander that is spread all over the office and carpet floor due to dogs moving all around the office and their owners constantly rubbing them and touching computers, pens and other materials used in the office. I had to go to the emergency room for a shot. I was itching and breaking out due to my exposure to the dog dander. I advised corporate of the issue and they advised I file a workman's compensation claim. I advised them it was the employee's dogs from the beginning. I filed the workman's compensation claim, and nothing was ever done about the situation. I am constantly being exposed to the allergen every day. Employees still bring their dogs to work and keep them there during the full shift. I now must be seen by an allergist and pay a $100 copay. I am constantly itching and breaking out due to exposure to dog dander. I am really suffering at my place of employment. Corporate requested I file the workman's Compensation claim. I lost clothes because of the exposure to the dog dander and my health.

8. I was written up for a procedure I was never trained on and had to battle for weeks with corporate for its removal from my record.

9. Corporate would not respond when I asked them if they received the EEOC complaint.

10. Video cameras were placed everywhere I work after the EEOC stated they had forwarded the complaint to management. I am watched on a continual basis as if I were a criminal.

11. Breached promise to stay at Hotel as long as I lived at 59 pernight Mangement.

There are many other acts of retaliation that can be proven with factual physical evidence

RIGHT
TO SUE LETTER

## DISMISSAL AND NOTICE OF RIGHTS

To: **Erika Jacobs**
**PO BOX 6252**
**Broomfield, CO 80021**

From: **Denver Field Office**
**303 East 17th Avenue**
**Suite 410**
**Denver, CO 80203**

| | *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **541-2020-01180** | **Lowell A. Pate,**
**Intake Supervisor** | **(303) 866-1329** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Lowell A Pate* for

September 23, 2020

Enclosures(s)

**Amy Burkholder,**
**Director**

*(Date Mailed)*

cc: **Christine Nilluka, VP of HR**
**AIMBRIDGE HOSPITALITY dba TOWNE PLACE**
**SUITES**
**5851 Legacy Circle, Suite 400**
**Plano, TX 75024**

COPY of
Administrative
Charge to this
Complaint

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **541-2020-01180** |

| Colorado Civil Rights Division | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Erika Jacobs** | **(602) 434-3107** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **PO BOX 6252, Westminster, CO 80021** Broomfield | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **AIMBRIDGE HOSPITALITY D/B/A TOWNE PLACE SUITES** | **500 or More** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **480 Flatiron Blvd, Broomfield, CO 80021** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest / Latest |

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN

**01-10-2020**   **01-10-2020**

☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☒ OTHER (Specify)

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with the respondent on Nov. 18, 2018 and have provided service in the following states: Oklahoma, Massachusetts, and Colorado. I have always performed exemplary service and or job duties. On Jan. 10, 2020, I was given a verbal disciplinary action by the assistant General Manager. The verbal warning was due to me not collecting an employee form from a guest on Jan. 7, or Jan. 8, 2020. I was never instructed or trained to collect employee forms from guest. I contacted the regional manager (our location has no general manager), about the unfairness and removal of the verbal warning from my employee record. The regional manager supported and refused to remove the verbal warning. The regional manager wanted to put me on a (90) day probationary period due to the verbal warning. I then took my complaint to the human resources department; in which I went through tolling levels of management (it took weeks) to have the verbal warning removed from my employee record. The verbal warning was removed by the HR vice President. After the removal of the verbal warning the managers at Towne Place began retaliatory actions. The managers fought to keep the verbal warning on my employee record and were terribly upset when the verbal warning was removed. Retaliatory actions 1. The regional manager tried to link

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 8-8-20       *Erika Jacobs*<br>Date       Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 541-2020-01180 |

| **Colorado Civil Rights Division** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

me to a crime as it pertains to the employee forms. The regional manager stated they were trying to find the employee who was given guest employee rates/employee forms and acted as if I was a suspect on Jan. 15, 2020. I did not know anything about employee forms and or rates and could not possibly be the employee that was performing the illegal action. 2.The assistant GM and Regional Manager breached my hiring agreement as it pertains to living arrangements (this was a verbal agreement between the Assistant GM and myself at the onset of hire). It was agreed as an acceptance of the position as Night Auditor that I could stay as long as I like at $39.00 a night with the first 30 days for free. The managers basically forced me out of the hotel. I reported the managers breach of agreement as it pertains to living arrangement to HR; HR did not do anything to stop the managers action. 3. I was falsely accused of overcharging a guest with a 3rd party reservation (this procedure of 3rd party reservations has always been performed perfectly by me repeatedly as an employee at Towne Place Suites). 3. I was demoted in my job duties. The assistant GM had a shuttle driver take my position as the night auditor trainer in the training of the an employee on Night audit (training other night auditors is a part of my job description). 4. The assistant GM and Regional manager reduced me from full-time to part-time employee (I was hired as a full -time employee-Night Auditor) and I had to contact HR to have my full-time hours restored by an HR representative. 5. The managers at Towne Place tried to disregard my title as Night Auditor. The Human Resources, Representative had to instruct the managers that I was the full- time night Auditor and that Night Auditing is a specialty, etc.

I believe the respondent is retaliating against me due to my opposition to the verbal warning on 1-10-20 and due to a lawsuit I filed in MA against a Holiday Inn in Woburn, MA, which is not owned by respondent. The lawsuit with Holiday Inn in Woburn was about the violation of my consumer rights and a copy of the lawsuit was sent by Holiday Inn in Woburn to the respondent's Corporate office. This upset the Human Resources Department of Aimbridge Hospitality. I was called into a meeting with my general manager and HR manager, for a conference which threated my job. I transferred to Colorado due to the conflict of Holiday Inn in Woburn actions and due to unwanted sexual harassment at my place of employment in Massachusetts. In Massachusetts a fellow co-worker, female shuttle driver, hit me on my buttocks extremely hard with her hand. I reported her action to my general manager in Massachusetts and the action was not taken seriously. Most important I experience racism at my job. I am the only Black female from America at Towne Place Suites. There is an African employee but from a different country and or nationality (That employee is no longer employed with the company). All other Front Desk Staff are treated differently from me. Management trains other employees to do my job responsibilities in exchange of giving me more cleaning responsibilities. I was hired as a Night Auditor and not housekeeping. Management does not communicate with me as they do other personnel. If other employees make a request about a job issue it is addressed immediately. Whereas, if I make a request about a job issue it is oversighted. I had to contact Human Resources to have them regulate management in effective communication with me as they do other employees. If any employee does not want to do a job assignment it is passed on to me with no discussion; this is very unfair. I have been overlooked as employee of the month consistently. They even make some staff members employee of the month 2-3 times in a year to avoid presenting me as exemplary employee, etc. I believe the Respondent is discriminating against me, based on my race (black), national origin (American), and in retaliation for opposing discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 5-8-20 _____ *Date*    _____ *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

EEOC COMPLAINT

HAPPENINGS PRIOR TO LAST UPLOADED INFORMATION

RETALIATION:

1. Brad Preston retracted and took away my living privileges that were promised to me before I accepted the job and moved from Massachusetts to Colorado. Brad Preston retracted and took away my living privileges because I complained to Human Resources about a verbal that was unfair and not warranted to me. No one in HR (Human Resources) would object to his retaliation they just waited for me to find an apartment in Colorado. Colorado is very expensive and it is not easy to find a place to live. The average rate for a studio is 1440.00 and the biggest problem is qualifying (credit and financial is strictly construed here). I brought this matter to HR Manager Diana Mills and Christine Niluka HR vice president.

2. I am a full-time night auditor, which is considered a speciality. I was needed full time for COV-19 and all year long. The assistant GM with the regional manager tried to take away my full time hours as a night auditor and give them to other persons. I had to fight for my hours with Human resources, Christine Niluka and Tara Hunsinger. Human resources did make sure my full-time hours were not taken away by management and it was stated that I was the full-time night auditor as a speciality. I now had an apartment and paid excessive rent and my apartment complex was not offering no delays in rental payment. Rent was due at the 1st of each month. The assistant GM at the time was Lyric Galek and the Regional manager was Brad Preston.

3. I asked to be relocated or to have new managers because the communication between I and the managers were not conducive to a productive environment. I made this request to Human Resources. Human Resources promoted Lyric to a new position. Brad Preston appointed Tessa, front desk manager, as the New assistant GM. Tessa was with Lyric and Brad Preston in everything they did to me. Thus, the placement of Tessa Fetch as the new assistant GM only facilitated conflict and problems. HR did tell me to look for another position online. Yet for some odd reason no one was hiring for night auditors for Colorado as they normally do (in every other state they were hiring for night auditors as usual but not in Colorado).

4. Tessa has been trying to take my title as night auditor away from me: She had Elizabeth, Shuttle driver, train Brian as the part-time night auditor. It is a part of my job description to train all new night auditors. Elizabeth is not the night auditor. Elizabeth had been the night auditor in 2018 for a short period of time. Tessa considers me to be a full time associate and not the full time night auditor irregardless of what human resources states. Please see Racism below to find out why this was done.

5. I was being given extra cleaning duties, I am not in house keeping. This is not a part of my job.

6. I was fasley accused of charging a guest $60 in error on 6/21/20 by Elizabeth. Tessa,assistant GM, backed Elizabeth up on the matter. There was nothing on my record thus the two of them conspired to place false information on my record.

7. Management consistently overlooks informing me of changes at the workplace for instance: incidental price change, CLC training and etc.

## RACISM

1. I am being discriminated based on my national origin. I am the only black American female working at the hotel:

a. Management refuses to believe that I have the skills as a night auditor to perform all necessary duties. Although I was hired because I came from two other hotels highly recommended with experience as a night auditor. For instance from the beginning paperwork responsibilities I was suppose to perform were taken away later to be replaced with cleaning duties. They trained the night auditor and shuttle driver, Elizabeth, as to  how to sort and manage the audit files after transfer to management. Why was I not trained to do this.

b. If any Caucasian employee does not want to perform a job duty that is their responsibility it will be passed to me to do. Example: cleaning the urns for breakfast staff and laundry. Now during Covid-19 HR asked me, Tara Hunsinger, asked me if I would help with laundry at  night temporarily until the regular staff returned. I agreed because it was only temporary. Yet, the full staff returned and Tessa Fetch, assistant GM, stated that I would have to continue to help with laundry. There are two laundry attendants who have been handling laundry since I began working there. They are: Karla (morning shuttle driver also) and Ceclia. For some reason the ladies on the laundry want me to assist them with their normal job duties. Laundry affects my allergies as I told management. I requested mask . Sometimes mask were present and sometimes not. I can no longer help with laundry due to allergic complications.

c. If other employees make request about the job management will immediately answer versus if I make a request it is generally overlooked.

d. Tessa and prior management had Elizabeth,shuttle driver, making changes to the night audit packet without even speaking to me and finding out how the changes impacts my job duties. For some reason management believes she is more skilled in night auditing than I am. During Cov-19 the part-time night auditor, Tsion, quit the job. Elizabeth worked my two days off and kept making changes to the night audit process in which management approved of. Basically management considered Elizabeth the full time night auditor and discussed all changes with her. This is the reason Tessa ,assistant GM, had Elizabeth to train Brian as the new part-time night auditor. Basically, Brian the new part time night auditor does things Elizabeth's way.

e. I am always overlooked employee of the month. Housekeepers and other staff are recognized as exceptional employee's but I am not.

f. I cannot even speak to the Regional Manager, Brad Preston, about any matter concerning the job without him calling me a liar. Why is he calling me a liar. I have not lied about anything at the workplace.

g. Brad Preston pinned me as a suspect for a crime I had never committed. He was looking at me as the person that was giving guest employee forms to check in (that was apart of the verbal complaint I had in Jan. 10, 2020). To begin I did  not know how to imply the employee rate to any reservation until June 2020 when I went out of town and Tessa had to show me how to obtain a copy of my employee card and how to make a reservation. I do not do illegal activity because I am black. I do not appreciate and will not tolerate management telling police false information about me. I am well educated college graduate. I do not commit crimes because I am black. Black lives matter.

Included
w/ exhibits

S41- 2020- 01180

ERIKA JACOBS

PO BOX 6252

BROOMFIELD, CO 80021

602-434-3107

Jeneencat2@outlook.com

**JANUARY 27, 2020**

**EEOC TIMELINE OF COLORADO EVENTS**

The Event occurred on Jan. 10, 2020. On Jan. 10, 2020 I, Erika Jacobs, received an unwarranted
Verbal from the assistant GM, Lyric Galek.  I work at Towne Place Suites in Broomfield, CO and it
is owned by Aimbridge Hospitality. We do not have a General Manager at this location. We only
have a regional Manager, Brad Preston, who manages several hotels in the area. The highest
command at our location is Lyric Galek, Assistant General Manager. Below is a timeline of the
events that lead up to this day and the days following my discussion of the matter with
Aimbridge Hospitality Human Resources (Towne Place Suites is an Aimbridge Hospitality Hotel):

- On Jan 8th or Jan 7th, 2020, I had a guest check in by the name of Desire Andrews. I verified
  Ms. Andrews ID (which was a driver's license) and her credit card (which was an
  American express

  Reloadable debit card that is sold at local drug stores; these type of debit cards
  generally does not have a name on them at the offset. Some of these reloadable debit
  cards send them a card

  Later with their name on it and others do not. I want to make a clear fact that this was
  not

  An American express gift card. Our hotel allows guest to check in with these reloadable
  debit cards without a name being on the card. I was given permission/orders by Tessa
  Fetch, front desk manager of Towne Place Suites, that it is permissible and accepted

1

policy to allow guest to check in with reloadable debit cards with no name listed on the card at all. This policy is acceptable in every Aimbridge Hospitality Hotel I have worked at. Every front desk manager at every Aimbridge Hospitality Hotel I have worked for has given me permission to check in guest with reloadable debit cards that do not no name listed on the card. Believe me this information can be confirmed and verified. I have worked at a couple of Aimbridge Hospitality Hotels.

- On Jan 9th, 2020, I came downstairs after 5pm to take a shuttle. The front desk agent, Brian, was talking to police officers. As I walked toward the front desk Brian told the Police that is the person that checked her in (her I found out later was Desire Andrews); the person (that checked in Desire Andrews) Brian was referring to was me. The Police then turned to me and start asking me questions. The Police asked me if Ms. Andrews had anyone accompanying her at check in, what form of payment and identification did Ms. Andrews use. The Police told me that Ms. Andrews was a criminal that had stolen multiple credit cards from many people. I told the Police that Ms. Andrews ID and credit card was verified according to hotel procedure and that no one was with her at check in. That night the police confiscated everything in Ms. Andrews room and impounded her vehicle. The Police asked for my name for their report. The police should have questioned management and not me about the incident. I told the police that my name is Erika and that I was the full time Night Auditor (and that was all the information they needed to know, then the detective told me I can find out your last name and I told him all he needed was my first name and that I was the full time Night Auditor at the hotel).

- On Jan 9, 2020 around 10:25 pm I received a text from the Assistant GM, Lyric Galek, and it read did I get an employee form for Desire Andrews. I replied stating no I did not, and no one told me that I had to. I called Lyric at 10:30pm to inquire about the text sent to me. I told Lyric via phone that no one told me I had to collect an employee form for Desire Andrews. I also told Lyric that I was questioned by the police tonight, 1-9-20, about Desire Andrews and I asked Lyric if she had already spoken to the police about Desire Andrews. Lyric replied, no she had not spoken to the police about Desire Andrews. Lyric also stated via phone that there are rate codes that identify employee's

2

that we need to collect employee forms on. I responded to Lyric via phone and said no one had ever trained or given me these rate codes. I asked Lyric via phone what was the rate codes and Lyric replied there are 6 of them but she did not know what they were. Now, if Lyric, the assistant GM, did not know the employee rate codes how would I know them. No one at Towne Place suites trained me on employee rate codes are requested I look out for them at check in in-order to collect an employee form or employee card. Lyric told me via phone that she would be in at 6:45am in the morning and that she would talk to me then.  Now Lyric normally comes in at or after 7am; I would later find out why she was coming in at 6:45am. Now, we have a communication log for management to communicate with front desk staff and it is called a shift log. No one left a message for me in the shift log to collect an employee form for Desire Andrews. Even if Ms. Andrews would have provided an employee form it still would have not prevented her from checking in. The employee form verification system had been down for 2 months and was not fixed until 1-10-2020 for front desk associates use. Thus, even if Desire Andrews would have provided an employee form its credibility could not be verified.

- On Jan. 10, 2020, I was asked to come into the office by Lyric Galek, assistant GM, after I clocked out. In her office Lyric Galek stated she was giving me a verbal for not collecting an employee form for Desire Andrew. I had never been trained on employee rate codes or told by management to watch out for employee rate codes in-order to collect an employee form or employee card (how can I look out for employee rates I do not know). Lyric Galek told me this verbal was not up for discussion. I told Lyric Galek that I would not sign the verbal and I would take this matter up with Human Resources.

- On Jan. 10, 2020, I emailed the Regional Manager, Brad Preston, about the verbal warning issued to my record by Lyric Galek and he responded immediately as to his agreeance with Lyric Galek in giving me the verbal. I have seen Brad Preston 10 times or less since I have been working at Towne Place Suites, yet he speaks about me as if he knows my abilities as an employee or me personally for that matter. Thus, I reached out to Human Resources to file my complaint for removal of the verbal warning. I called

3

Aimbridge Hospitality to find out which human resource manager was over Towne Place Suites. I was told that Kelly Garcia was the human resources manager over the property of Towne Place Suites and that Diana Mills was the supervisor of Kelly Garcia. I had spoken to Diana Mills before pursuant my transfer in September 2019 from Massachusetts to Colorado. Thus, I sent an email

To Diana Mills about my complaint for removal of the verbal from my record. Diana Mills forwarded the information I emailed to her to Kelly Garcia. Kelly Garcia emailed me to request a phone conversation about my complaint for removal of the verbal from my record. Kelly Garcia and I agreed to discuss the complaint on Monday, Jan 13, 2020 at 11am.

- On Monday, Jan.13, 2020, I had a phone conversation with Kelly Garcia about my complaint to have the verbal removed from my record. This was not a productive conversation for the simple fact Kelly Garcia, Human resources personnel, believed that a verbal can be given whether the information was true or not. Kelly Garcia stated that it is the employer's right to give out verbals to any employee regardless if the employee was guilty or not. Kelly Garcia listened to nothing I stated. Kelly Garcia even changed Brad Preston position over the phone from Regional Manager to General Manager. Brad Preston is the Regional Manager of Towne Place suites in Broomfield, CO. Kelly Garcia stated she would speak with management and get back to me. Kelly Garcia never contacted me again.

- On Wednesday, Jan 15,2020 Brad Preston, Regional Manager, spoke to me about the verbal complaint. Brad Preston told numerous untruths during the entire conversation. Brad Preston start making accusations about my work performance in which he has never been present to witness falsely and unjustly. I found out during the meeting that Brad Preston was conspiring against me by telling numerous lies about me and had no regards toward my verbal Complaint. Brad Preston began the conversation stating to me that, "You know I am the one behind the verbal you received". Brad Preston falsely claimed I was trained on employee rate codes and was given the rate codes at a meeting. This is not true. Brad Preston never witnessed me being trained on employee

4

rate codes, employee forms or employee cards. Brad Preston and Lyric Galek are very good friends he was simply just taking Lyric's word on the matter. Brad Preston told me the following during the meeting:

- I was the only employee at Towne Place Suites that was having a problem with employee rate codes and employee forms. He stated I was not collecting the employee forms as I should. (**Brad was suggesting all the other employees were doing great and I was doing wrong or bad. This is all a lie. No one at Towne Place Suites trained me on employee rate codes or to collect employee forms/cards. I do my job exceptionally well. No manager or supervisor gave me any employee rate codes or instructed me to collect employee forms. Thus, how can I look out for employee forms without knowing the employee rate codes. Lyric Galek told Human Resources that all you must do is take a rate code to F1 to look it up. You can take any rate code to F1 and look it up but that is not going to tell you if the person is an employee or not, unless it specifically states employee in the meaning of the code. F1 rate codes states things such as: Roadrunner, Explorer Rate, etc. What is that telling you nothing, unless someone in management tells you specifically that Explorer Rate is an employee rate code. <u>I asked Brad what was the 6 employee rate codes and Brad Preston stated that he did not know them and that he was working on trying to find out what they were. Brad Preston did not know anything about the employee verification app for employee forms/cards. Brad Preston did not know that the employee verification app had been down for 2 months and was fixed/repaired for employees to use on 1-10-20.</u> Brad Preston seems to believe if you know about the employee app that you had to have been trained on employee rate codes and told to collect employee forms. This is very untrue. I was working one night, and a guest gave me an employee form for the first time. I kept it because no one had told me anything about the employee forms/cards. I work 11pm-7am. That morning I asked my supervisor what I should do with the form. My supervisor told me he would take it. Thus, every time someone gave me an employee form, which is rare working my shift, I would give it to my supervisor, Scott, the following morning. One day I received**

an employee form/card and gave it to my supervisor the following morning, but this time my supervisor instructed me to fax the employee form/card to Lyric Galek, assistant GM, and then throw away the employee form. I started working at Towne Place Suites in September 2019. On the last week of October 2019, I was told by Tessa Fetch, front desk manager , that anytime someone gives me an employee form /card that they must be verified on the employee verification app in order for the person to check in to the hotel. The employee verification app went down in November 2019. There is an employee number on the employee form and that is all you plug into the app to find out if the employee form is valid (it shows you the employee name and expiration date only; take in mind that employees can allow their friends and family to use there employee forms/cards). Now I said all that to say this. No one ever trained me on the employee rate codes thus when checking someone into the hotel I do not know if they need an employee form/card or not. If a guest gives me an employee form (which is rare on my shift) I kept them and did as instructed by my supervisor and front desk manager. No one in management trained me on employee rate codes are instructed me to collect employee forms; I was only told what to do if I was ever received an employee form as stated above. At the other hotels in which I worked I never received an employee form/card, and no one trained me on the receipt of an employee form/card. At the hotels I came from I never had an employee form or card given to me. If I had to make a hotel reservation, I used my enrollment number in which no one had access but me to make my reservation. All the hotels I have worked at were owned by Aimbridge Hospitality.

- Brad stated that management had asked me several times for employee forms/cards. This is not true at all.

- Brad wanted to put me on a 90-day probation period for the verbal. Why would I be under a 90-day probation period for something I was not trained on. I disagreed with the 90-day probation period because I had done no wrong.

- Brad mentioned that they were trying to find out which employee was giving

6

persons their employee form/card to make reservations. The Police told me that Desiree Andrews was a criminal that had stolen many credit cards.

- Brad looked up my job description to try prove I was trained to collect employee forms. This was no where on my job description.

In summary, my meeting with Brad Preston was unprofitable. He listened to nothing I had to say. Brad Preston only tried to find evidence that I was guilty and there was no evidence to convict me of a crime. **I cannot confirm but I believe Brad Preston and Lyric Galek gave police officers information about me that should not been released. I have no criminal record. Yet, I believe they lied to the police and told them I was not following company policy and may have given them a copy of my drivers' license. I cannot confirm this I just heard people talking around me about the happening. I truly believe that Brad Preston, Lyric Galek and Tessa Fetch issued me a verbal to try to link me to wrongdoing for the criminal activities of guest, Desire Andrews.**

- On Jan 23, 2020, I sent an email to Corporate Human Resources for a response to my complaint. Diana Mills, HR regional manager, responded that the verbal would not be removed and gave all 1. corporate has any respect for me. She never read any emails or attached documents I sent her. Diana Mills would instead forward all information I sent to her to someone else without reviewing a thing.

- On Jan 24, 2020, a front desk meeting was held where management finally gave us 3 of the employee codes (one of the rate codes in  which I gave them in inquiry MARH of a gentlemen in which someone else checked in on a prior shift that came down late at night to request something be documented to his account). Thus, I, Erika Jacobs, should have never been given an unwarranted verbal for employee rate codes in which I was not given or trained on, and or which management did not know themselves.

**EXHIBIT A: MY JOB DESCRIPTION AS A NIGHT AUDITOR**

**EXHIBIT B: EMAIL COMMUNICATIONS BETWEEN CORPORATE AND MYSELF**

**EXHIBIT C: JAN 24, 2020 MEETING AGENDA, THIS IS WHERE I RECEIVED 3 OF THE EMPLOYEE CODES FROM MANAGEMENT FOR THE FIRST TIME OF MY EMPLOYMENT WITH TOWNE PLACE SUITES**

**THIS EEOC COMPLAINT IS BASED ON:**

- **RETALIATION**

- **RACISM**

- **NATIONAL ORGIN**

- **RETALIATION:**

    Corporate and Towne Place Suites are retaliating against me for a lawsuit I filed in Massachusetts against a Holiday Inn located in Woburn, MA. The Holiday INN in Woburn, MA was not owned by Aimbridge Hospitality. Yet, the manager of the hotel sent my employer a copy of the lawsuit in an attempt to get me fired. My manager at the Hyatt House in Massachusetts and the HR manager called me into a meeting to let me know they had been sent a copy of my lawsuit and was told by the Defendant that I was suing my employer as well. This information was not true. My job was threatened that day due to the lawsuit unlawfully being sent to my employer. I decided to transfer to another hotel due to the tension the defendant, Holiday INN in Woburn, MA had brought about at my employment in Massachusetts amongst other things. Thus, I was transferred to Towne Place Suites in Broomfield, CO. No one had any respect for me at my employment or corporate after the lawsuit was sent to my employer by Holiday INN in Woburn, MA.

    #2. I complained to management at Towne Place Suites about someone going into my room without my consent and moving my personal belonging around. I stay at Towne Place Suites and am under Green Choice meaning I do my own

8

housekeeping. No one cleans my room but me. Lyric Galek stated she would give me a printout to find out who has been going into my room. All of a sudden, the system was down claimed Lyric Galek and she could not give me a printout but when the system came back up she would give me a print out. The story changed after I filed my complaint about the verbal to corporate now Lyric Galek and Brad Preston stated to corporate that they had never told me that I would be given a print out of my room audit (which is times in which entries were made into my room). The only missing item from my room is my credit information from Experian and Equifax in which I informed Towne Place Management of. **On Jan. 24, 2020, I could view my room audit back to 12-21-19 up to now with Lyric Galek and Brad Preston. This really did me no good since the events in question happened prior to this date. Yet, I was told I used my key fob for work to open my room on 1-17-20 and 1-19-20 instead of my key card and that is not true. I used my keycard on 1-17-20 and 1-19-20 to get into my room. What puzzled me about the use of the key fob was that both times were for 5:34am, how could that be.** I, Erika Jacobs, was on to someone going into my room and management did not want me to uncover whom it was.

#3. I had to Train an employee named Tsion on night audit. Tsion was consistently performing actions contrary to my training of her and doing other things to spite me. I reported all the incidences of Tsion behavior to Towne Place Management. Lyric Galek nor any other manager really did not care about Tsion's behavior. I know that upset management about my complaints in relation to Tsion because they liked her as an employee. I say complaints but it was really concerns to help make Towne Place Suites a better place. In no means was I trying to get the employee mentioned above in any trouble I just wanted to make sure that her work was being done in order with company policy.

#4. Before I came to work at Towne Place Suites in Broomfield, CO. I was told by Lyric Galek that I could stay at the hotel as long as I liked at the rate of $39.00 a day. I was to be given the first 30 days for free and then after my charge was to be $39.00 a day. Brad Preston tried to break the promise of me being able to stay at

9

the hotel as long as I like and raise the rate of my stay cost. Lyric was untruthful and stated she never told me I could stay at the hotel as long as I like at the rate of $39.00. Brad Preston tried to apologize for Lyric Galek and stated if she promised me the above, she did not mean it that way. **After I made the complaint about the verbal my living arrangement was threatened with an ultimatum to leave by March 1, 2020 by Lyric Galek. Brad Preston stated he may can extend my stay for about two weeks after March 1, 2020 given the situation. Now the company has broken their agreement with me as it pertains to living arrangements.**

**#4. The Sexual Harassment situation I had to bring to my manager, Andrew, at the Hyatt Hotel in which a female employee by the name of Val, who drives the shuttle van, hit me on my buttocks very hard. I told Val do not hit me in that manner. I reported Val to my General Manager, Andrew. No one really cared about me reporting the issue. I do not think it was taken seriously. I was very upset by her hitting me on my buttocks. I was told the employee; Val was spoken to. This event happened July of 2019. Recently, I had an employee by the name of Karla, shuttle driver, hit me on my buttocks and then say excuse me (this happened at Towne Place Suites in Broomfield, CO). I saw her coming up behind me she had ample room to get by or she could have said excuse me prior to reaching her destination. I did not know that she is planning on tapping me on my buttocks. I believe Karla tapped me on my buttocks intentionally and said excuse me to throw me off.**

- Racism

There his been racial implementations by management in reference to my performance. Pursuant the stereotypes black people cannot be trusted, and black people do not do their job. Normally, as a night auditor you work alone from 11pm 7am at the front desk. Lyric Galek, assistant GM, did not trust me as a Night Auditor she rescheduled another employee by the name of Elizabeth to stay and watch me at night. Elizabeth has stayed as late as 2:45am but is scheduled to leave at 12:00am. Since the verbal, Elizabeth has been leaving close to her scheduled time

to leave; she leaves now around 12:30 am. Per Brad Preston I have a problem with job performance that the other employee's do not have. All the other front desk employees are of different racial backgrounds and one nationality. I perform my job very well everywhere. There were no complaints about my job performance at any of the other hotels in which I worked. I am treated differently and referenced differently by the managers at Towne Place Suites.

- National Origin:

I am entitled to comprehend that management appears to have a problem with African Americans born in the US versus Africans or blacks born out of the United States. The management appear to be very objective in their judgment of me based on racial profiles of African Americans born in America.

Exhibit D: Emails about my stay and my room audit lock request.

**ERIKA JACOBS**

**PO BOX 6252**

**BROOMFIELD, CO 80021**

**602-434-3107**

Jeneencat2@outlook.com

Jan. 16, 2020

**Attention: Diana Mills**

Now this letter is a follow up on the conversation I had with Brad, Regional Manager of Towne Place Suites. This letter is intended for you knowledge and request it not be transferred to someone else.

Briefing:

Time line:

Jan. 13,2020: Conversation with Kelly Garcia. Kelly Garcia seemed to feel like Towne Place Suites had the right to issue me a verbal whether the charges against me were true or not. My response a verbal should not be issued if the charges are not true. Kelly Garcia stated she would speak with management at Towne Place and follow-up with me (Kelly was unsure as to how she would get the follow up information to me).

Jan. 15,2020:

Meeting with Brad regional manager of Towne Place Suites.

Brad informed that our meeting were on the following topics:

My Stay at Towne Place Suites

Verbal

People going into my room

(To begin the verbal issued to me on Jan 10, 2020 per Lyric Galek, assistant GM, was not up for discussion. The verbal was based on an employee rate. Now Lyric stated that there were 6 employee codes and to this day I do not have not one of the employee rate codes because her nor Brad do not know the code. If management does not know the rate codes then how can I. I should not be held responsible and the verbal should be withdrawn on something I was not

1

trained or have no rate codes on.)

- Brad and I began the meeting by talking about the Verbal. I expressed to Brad that no one had given me any rate codes to look out for as it pertains to employee rate. Employee rates can range from $39.00 - $89.00. Also, specials issued to company's and individuals by the Sales department or manager can range from $0.0 -$89.00. If management needed a copy of any form from a guest that was on their AM arrivals a note or message could have been left to me o the shift log or on a sticky notes, or by 2nd shift. No one let me know of anything. I verified the guest, Desiree Andrews, per hotel standards and checked her in. I had no knowledge of Desiree Andrews criminal background.

- Now Brad informs me in the meeting that Mrs. Andrews was under the employee rate. He believes that if we would have requested the employee form from Ms. Andrews that she would not have been able to check in. Now per my training no one had me looking out for employee rates at no hotel for the collection of the employee cards. I was simply told at Towne Place Suite by my own inquiry when someone gave me an employee form overnight to scan it to the assistant GM and toss the form after scanning it. Toward the end of October the Front desk manager stated that if given an employee form (she did not tell me any rate codes to look for or to watch out for employee rates) by a guest it must be verified for accuracy before checking the guest in. There is a special AP on Marriott where you can verify if the employee form is valid; if when you put in the employee number everything is red the employee form is not valid and you must also verify expiration date of the employee form on the Marriott AP. The Marriott Ap where you verify employee forms has been down for two months now (November and December of 2019). The Marriott Ap for employee verification was fixed on 1-10-20. Thus, Ms. Andrews was checked in on Jan. 8, 2020 and would not have been able to be verified as an employee because the Marriott AP does not work. Thus, even if someone would have left me a message to obtain an employee card for Mrs. Andrews it would have not stopped her from checking in (while the Marriott AP was down for employee verification any guest who were employee's could only give us the

2

form and we keep it on record we had no way of verifying the accuracy of the form).

- It appears as though I am being blamed for Ms. Andrews check in. I , Erika Jacobs, followed company rules and regulation for her check in. I verified her ID and Credit Card used.

- Brad stated to me for the first time that I was the only employee that was having a problem with collecting employee forms. This is not true. This is the first time I had heard of this false accusation. Brad then tried to look up my job description and I assume could not find anything on it that stated I verify AM arrivals check-in. That job is for the first shift. It appears that I am being blamed for Ms. Andrews check in and that is unjust.

- Brad was not aware of the rate codes for employees. He stated he was still trying to figure out what they were. Brad told me for the first time that employee rate codes begin with the letter **Z.** Now, at least I know the rate codes for employee's begin with Z. Now, if management does not know the employee rate codes and did not instruct me to look for them I should not have a verbal. Brad then wanted to put me on a 90 day review because of this matter. Why would I be on a 90 day review for something I have done no wrong in.

- Then Brad basically apologized for Lyric Galek, assistant GM, offering me to stay as long as I liked at the employee rate. I informed Brad that I was looking for an apartment but I do not know how long the process will take. At this point Brad's apology is irrelevant. I came from Massachusetts on the promise that I can stay at the hotel at the employee rate of $39 as long as I like. Just for your information I am trying to acquire an apartment , I am having problems because my income is not 3 times the rent but I am still looking. Yet, while I look I do not need this added pressure their promise to me should be kept. Now Brad start telling me he can extend past March 1, 2019 for 3 weeks and he was going to take away my employee rate after a certain time (this is not fair; Brad was just trying to justify all wrong being done to me and not reaching a resolution).

3

- Brad was not even familiar with the Marriott AP for employee form verification.

In summary, no resolution was reached because I am being blamed for the check in of Ms. Andrews. Case in Point, tonight I hade a rate code of : MARSH but the amount for the rate was $39.00, per the rate code definition it was: explorer rate. Now is this an employee code or not. I will keep the guest name confidential. Now, I did not check in this guest. The guest was checked in on AM or PM shift. Before Verbals are given (which are very serious to anyone's record) management should make sure that all staff has the proper information needed to perform the required task. I am asking for the verbal to be withdrawn it is unfair and unjust. I have more information on the meeting. This was just a general summary of the happenings at the meeting. Brad did say he would follow up with me on Friday. Yet, I think my job is being threatened by a matter in which I am not responsible for and have no control over.


Sincerely,


Erika Jacobs

1-16-20

4